Good morning, Your Honors. Guy Grande on behalf of Petitioner Juana Acosta De Leon. The issue in this case is whether or not an applicant for Special Agricultural Workers Legalization Program is considered to be admitted in any status for purposes of cancellation or removal. Much like the petition before this Court in Garcia Quintero, who was the beneficiary of Family Unity benefits. Can I ask you about Garcia Quintero? And again, I'm still puzzling over the Supreme Court's decision on Brand X. So since Brand X, the BIA decided Reza Murillo saying that we were wrong in Garcia Quintero. So does that make Garcia Quintero not reliable precedent for us here? No, Your Honor. I don't believe so. As the government stated in their supplemental brief, Reza originated out of... El Paso, Texas. And the issue in this case is not whether or not Ms. Acosta has Family Unity benefits, but rather if as an applicant for SOL, so it is factually and legally different. I understand that, but Reza Murillo said the presidential BIA decision said our analysis of this alternative method for being admitted was wrong. And so how does that affect our analysis of your argument here? I don't think it affects my analysis at all. This court has made a decision in Garcia Quintero in this jurisdiction. And therefore, a decision by the board in another jurisdiction is not binding on this court. So Brand X would say unless the presidential decision is in the jurisdiction of each circuit, then it's not controlling? Is that your interpretation? Yes, ma'am, it is. So this case, I believe, comes down to a compare-contrast argument when it comes to Family Unity benefits and an applicant for SOL, Special Agricultural Workers, under the legalization program. As government counsel indicated in their brief, they would like to characterize the benefits that were derived as merely receiving a work authorization document, as merely being an applicant. But I think when we look at the statutory construction of the SOL program under 210, we can see that there are strong, there's a strong congressional intent to protect these applicants for these very unique and narrow benefits. So when I was playing the compare-and-contrast game, that seemed to be one of the most questionable issues. Because in Garcia, where it was juveniles, I think, and in Garcia Quintero, where it was a Family Unity program, the person was accepted into the program, whereas in Vasquez and Guevara, it was merely an applicant. So here, she was an applicant, and in fact, at the end of the day, she was not accepted. Her application was denied. That is correct, Your Honor. I don't believe, though, that this Court should look at it in terms of being accepted or being granted the benefits sought or the relief sought. In this case, it would be temporary resident status under SAW, which the courts have recognized that would be an admission. What we're focusing on here, and which applies to Ms. Aposta's case, is that applicants were given strong protection by Congress. They were given not only work authorization, and not all work authorizations treated the same. They were given work authorization incident to their status, as opposed to provisionally, when someone applies for adjustment of status. And I believe the court made that distinction in Guevara Holder, where an applicant who had applied for adjustment of status received a work authorization. That petition was trying to make the argument that receipt of work authorization there should be considered admitted in any status. However, this Court ruled that that is, that's a benefit that one can apply for. Here, what Congress said was, is that if you satisfy the requirements of the SAW program, you were to receive, you must receive work authorization. And incident to that, you may travel. Incident to that... Well, the travel was another area of concern for me, because under SAW, I guess she was paroled in. In Garcia-Quintero, we made a lot about admitted in the same immigration status, and really weighed that heavily. So it seemed more like the I-130 on the travel issue as well. What's your thoughts on that? The I-130 travel issue, and I believe Your Honor is referring to advanced parole, which is an application to the government to travel. And once that application is approved, an individual can travel. So Vasquez and Guevara both looked at that, both said that the admission status was connected to advanced parole, as opposed to Garcia-Quintero, that it was admitted in the same immigration status as the alien had at the time of the departure. We made a lot of that in Vasquez and Guevara. Right. Actually, my reading of Garcia-Quintero is that a Family Unity Program beneficiary also had to apply for permission to travel outside of the country, such as advanced parole. And while advanced parole is mentioned in the statute in regards to travel authorization for SAW applicants, as part of our supplemental brief, we showed that the way that travel is applied at the border by Customs and Border Protection is that if an applicant, just an applicant for SAW benefits shows their work authorization, validly issued work authorization, that individual is allowed to leave the country and enter without advanced parole. That doesn't really show as congressional intent, which I think is what we're focusing on. No, it doesn't, but I believe that its application is helpful here, showing that SAW applicants were given great protection, as opposed to an individual who applies for adjustment of status and requests travel. I'd also like to point out that the statute not only protected applicants for SAW, but also potential applicants for SAW as well. The period to begin filing an application for SAW benefits was June 1st, 1987. And so the statute specifically states that for individuals who are apprehended prior to that date to apply, they should be given work authorization and protection against removal or deportation. I have a question to ask. Yes, sir. I mean, you've been arguing all over, but, you know, and I'm sympathetic with much of your argument, but I do not see any way that this court can get around Guarva v. Holder, the case that was decided in 2011, which was a work authorization, although not specifically this, but very similar, and Judge Fischer dissented. While I might like to dissent, I can't see how this panel is not bound by that decision and therefore bound to affirm. Your Honor, I believe that Guarva can be distinguished from this case. Well, in any substantial way. I mean, you know, yes, you could say it's a little different on the facts, but there's not that much difference. As a matter of fact, the work authorization in that case may be stronger than the work authorization in SAW. Well, with all due respect, Your Honor, I would say that the work authorization in SAW is much stronger than the work authorization in regards to an application for adjustment of status. SAW work authorization was mandated by incident to your status as opposed to the work authorization in Guarva, which was provisional. You could apply or you simply could not apply. It's up to you. That option in a SAW applicant's case is you get work authorization. Have you any cases which say SAW and FUP are equivalent? No. All right. Thank you, Counselor. Maybe, but there's no case law. None that I can find, Your Honor. Okay. You did exceed your time, but we asked a lot of questions, so you may have a minute for rebuttal when the time comes. Thank you, Your Honor. We'll hear from the government. May it please the Court, Brianna Stripley on behalf of the Respondent, the Attorney General of the United States. Your Honor, there's nothing in the statute, the regulations, or the case law suggests that the mere filing of a SAW application, which was ultimately denied, constitutes being admitted in any status. All Petitioner had in this case was an approved I-688A, which was not in the statute. Which is a temporary work authorization card. All this allowed Petitioner to do was to have permission to work in the United States while his application was being adjudicated. This temporary benefit does not constitute an admission. Do you distinguish this case on its facts in any way from Guevara v. Holder? Your Honors, this case is both factually and legally analogous to Guevara. In particular, both aliens were entered without inspection. In addition, both eventually adjusted to LPRs. Both were placed in removal proceedings and both for attempting to smuggle in illegal aliens into the United States. Both applied for cancellation of removal and weren't able to meet the seven years continuous presence. And both have to argue, in order to get that seven years, that the United States, by granting them work authorization, somehow constituted being admitted in any status. The court in Guevara held that the right to apply for immigration benefits does not suggest that the undocumented alien becomes admitted due to the mere filing of the application. This court noted that had Congress intended to do so, it could have. And it didn't for 255I and it doesn't do it under the SAW statute either. The court in Guevara also held that there's nothing in case law, statutes, or the administrative regulation which supports a finding that a grant of employment authorization to an alien not previously admitted is the equivalent of being admitted. Petitioner in this case entered without inspection. Her presence was unlawful. It continued and remained to be unlawful even when she filed her SAW application. It wasn't until she adjusted her status under a separate basis that she became admitted when she became an LPR. The board has always confined its admission to the definitions essentially in 1101. And this court has noted that there is a distinction to be drawn between tolerating an alien's presence for a limited purpose and legalizing an alien's presence. Just because the government extends a courtesy of these temporary benefits to the alien while their application is pending does not mean that it was meant to confer admission. If this court were to hold that, it would actually have far-reaching ramifications. And I just want to bring to the court's attention asylum. After 180 days, asylum applicants get employment authorization and they can travel, although not to the countries that they're entering, otherwise they risk some loss there. But the point is no one would deem that those asylum applicants were admitted. And likewise here, just the extension of this temporary benefit, this courtesy, if you will, does not confer and does not constitute another form of admission. Let me make a comment because you come from Washington. You know, in light of the administration's position on immigration, and the attorney general is part of that administration, this to me is a very close case. And if it weren't for Guaravara, I would be inclined to reverse it. Do you hear any rumblings that the administration may change its viewpoint on some of these close cases? Your Honor, in this case, we don't believe it's a close case. But going back to the equities, I think you're referring to prosecutorial discretion. In this case, she was not only caught smuggling or attempting to smuggle an illegal alien into the country. She used false documents to do so. Actually, they were real documents, but they were used for a separate person that she submitted to a federal government officer. Moreover, although her application isn't in here, I'd like to note for the record that her SAW application was denied for fraud. And so there aren't the equities there that would simply… Does she have children born in this country? Yes, Your Honor. Does she have a husband in this country who's a citizen or entitled to be here? Your Honor, I am not aware of her current familial situation. But she does have children here. At the time of the record, she did. I don't know their current location or statuses. The other major distinction, which goes back to your question, is that she's not merely… Under Garcia-Quintero, an FUP beneficiary was very distinct from, in this case, what we have, which is a SAW applicant. So she never even got the approval. Basically, SAW was set up in a two-tiered review system. The first initial would happen at the district office. All that required was the submission of an application, and the only review there was for non-frivolous, which basically was just a checklist. You have all these forms. Okay. And as a result of that, you get an I-6088A. What that was not, however, was review on the merits or the substance of that application. Fraud was very prevalent in the SAW program, and so there was a lot to review. She didn't make it past that secondary review because of fraud. And so INS had to, for Garcia-Quintero, review the application and say for the Family Unity Program, yes, this person is a qualified and we're approved, we reviewed it on the merits. This case, she does not even get there. All she did was file an application with her name on it, essentially, and while that may have been non-frivolous and she may have gotten a temporary benefit, that was all that occurred. Unless this Court has any other questions, I think we'll submit on the brief. Thank you. Thank you. Mr. Grande, you have one minute. To the government's point that this was just an application that was merely filed as check-in boxes, the statute prescribed that if an applicant established eligibility, they had to submit to an interview by an officer to be issued the work authorization card. So the process with which someone received this benefit of a work authorization card was more heightened than just filling out an application, paying the fee and submitting it and getting it in the mail. Back to the issue, the government seems to state or their argument is that this is just receiving a work authorization card, much like in Guevara. It is more than just a work authorization card. The government made it a point to protect these individuals before they applied, while they were applicants, and which, despite the fraud in this case, she submitted to an interview and she was issued benefits. Thank you. Thank you, counsel. We appreciate the arguments of both of you. They have been very helpful to the Court. And the case is submitted.
judges: Bright, Graber, Ikuta